**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JIMMY BULLOCK** § | | **PLAINTIFF** |
| § | | |
| v. § | | **CAUSE NO. 1:04CV835 LG-RHW** |
| § | | |
| **AIU INSURANCE CO., THE** § | | |
| **GOTTFRIED CORPORATION, and** § | | |
| **AIG CLAIM SERVICES, INC.** § | | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT
## AND MOTION TO STRIKE AFFIDAVIT IN PART

BEFORE THE COURT is the Motion [146] for Summary Judgment filed by the last remaining Defendant in this case, Gottfried Corporation. The Plaintiff has filed his response, and Gottfried has replied. After due consideration of the submissions and the relevant law, it is the Court's opinion that the Motion should be granted because Gottfried has shown it had an arguable basis for litigating Bullock's eligibility for workers' compensation benefits. Therefore, Gottfried has shown that there is no question of material fact for the jury, and its Motion will be granted. Further, Gottfried's Motion to Strike [163] irrelevant or improper portions of Bullock's affidavit is well-taken and will be granted.

FACTS AND PROCEDURAL HISTORY

Bullock filed this suit in 2004 complaining about Gottfried Corporation's refusal or denial of workers' compensation benefits until approximately three years after he was injured in 1996. According to the Complaint, Bullock stepped off of a ladder and seriously twisted and injured both of his knees while working as a subcontractor for Gottfried on the premises of the Stennis Space Center in Mississippi. Bullock alleges that Gottfried's failure to provide the benefits due was motivated by actual malice against him "caused by prior or contemporaneous

acrimonious business dealings." Compl. ¶ 8. He brings intentional tort claims of bad faith and breach of fiduciary duty[1] against all of the Defendants generally, and demands punitive damages. The Mississippi Supreme Court set out the lengthy procedural history of this case as follows.

<u>Proceedings Before the Mississippi Workers' Compensation Commission</u>:

> In November 1996, Bullock was working as a subcontractor in Bay St. Louis, Mississippi, for defendant The Gottfried Corporation, a Louisiana corporation, when he injured both his knees while stepping off a ladder. Bullock filed a claim for workers' compensation benefits with defendant AIU Insurance Company, Gottfried's workers' compensation insurer. A dispute arose over whether Bullock was covered under Gottfried's workers' compensation policy with AIU. Coverage was denied.
> On January 9, 1997, Bullock filed a petition to controvert with the Mississippi Workers' Compensation Commission. On October 12, 1999, after conducting a hearing at which (as the October 12 order expressly states) the "only issue" considered was "the threshold issue of whether defendants are liable for payment of workers' compensation benefits under the Act," an administrative law judge entered an order finding that Bullock was an insured and that he was entitled to workers' compensation benefits under the AIU policy. No one appealed the judge's decision finding compensability to the full commission. AIU and defendant AIG Claims Services, Inc., promptly paid all back benefits owed Bullock, and Bullock began receiving and continued to receive workers' compensation benefits.
> Thereafter, the issue of temporary and permanent disability-which the parties had agreed to reserve pending a ruling on the issue of coverage-was litigated before the administrative law judge. A final hearing on the merits was scheduled for October 2003. In their pretrial statement, Gottfried and AIU included among "contested issues" the issue of "whether employer and carrier herein are the responsible employer and carrier regarding this claim." Also in their pretrial statement, Gottfried and AIU explained, "The parties have discussed the potential of having a bifurcated hearing in this matter, with the question of whether or not the Gottfried Corp. is the responsible employer being the only issue ... to be decided at the first hearing."
> Following a hearing on October 15, 2003, the administrative law judge

---

[1] The breach of fiduciary duty claim seems to go against the insurance company Defendants only, to the extent that it is separate from the bad faith claim. Neither party addresses it, and as contracting parties, Bullock and Gottfried would normally have only those duties toward each other that were set out in their agreement. *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So.2d 990, 994-95 (Miss. 2006).

entered an order on December 1, 2003, declaring Bullock's claim compensable and awarding Bullock additional workers' compensation benefits. On May 25, 2004, the commission approved payment of a commuted, lump-sum payment to Bullock, based on benefits awarded in the order of December 1, 2003.[2]

Proceedings of the Bad-faith Action:

On August 26, 2004, Bullock filed a bad-faith action in the Circuit Court of Hancock County, Mississippi, against Gottfried, AIU, and AIG, asserting a claim for bad-faith refusal to provide workers' compensation benefits. Defendants removed the case based on diversity of citizenship to the United States District Court for the Southern District of Mississippi, Southern Division, on November 18, 2004. 28 U.S.C. § 1332 (West 1993 & Supp. 2007).

Gottfried moved to dismiss Bullock's case, contending that the suit was filed after the applicable statute-of-limitations period had elapsed. AIU and AIG joined in Gottfried's motion to dismiss and filed an alternative motion for summary judgment, also based on the statute of limitations. Gottfried, AIU, and AIG argued that the limitations period began on November 1, 1999, or twenty days after the administrative law judge's October 12, 1999, decision in Bullock's favor-the period within which a request or petition for review by the full commission is permissible under Mississippi Code Annotated Section 71-3-47 (Rev.2000). Bullock responded on July 1, 2005, arguing that the limitations period did not start until May 25, 2004, when the commission approved the settlement.

The district court heard oral argument on the motions on February 6, 2006, and denied them after expressing its hesitancy to rule as a matter of law that the statute of limitations had run. On February 16, 2006, the defendants filed a motion to reconsider, arguing that the district court was duty bound under *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to address the statute-of-limitations issue. On February 22, 2006, the district court granted the motion for reconsideration and ordered the parties to file supplemental briefs.

In its opinion and order filed April 28, 2006, the district court concluded that the lawsuit was filed after expiration of the three-year statute of limitations dictated by Mississippi Code Annotated Section 15-1-49(1). *Bullock v. AIU Ins. Co.,* 2006 WL 1195465, 2006 U.S. Dist. Lexis 28764 (S.D. Miss. April 28, 2006), *question certified,* 503 F.3d 384 (5th Cir. 2007). Noting that Bullock's complaint did not allege any actionable conduct after October 12, 1999, and that since October 12, 1999, at the latest, Bullock had been timely paid all compensation

---

[2] This act is an administrative event, not a substantive act with regard to a claim before the commission. *See* Miss.Code Ann. § 71-3-29 (Rev.2000).

benefits to which he was entitled,[3] the court granted the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 based on its determination that the limitations period on Bullock's bad-faith claim began to run in October 1999 (when the time to appeal the judge's October 12, 1999, order finding Bullock entitled to benefits expired). *Id.*

*Bullock v. AIU Ins. Co.*, 995 So. 2d 717, 719 -720 (Miss. 2008).

The Mississippi Supreme Court held that the statute of limitations began to run only when the ALJ made a final decision to grant or deny a specific amount of compensation. *Id*. at 722. As the 1999 order concerned liability and did not award compensation, the limitations period was not triggered. *Id*.

Upon receiving the response to its certified question, the Fifth Circuit reversed this Court's judgment and remanded the case. Gottfried now moves for summary judgment on Bullock's claims, contending that they have either been released, are barred by *res judicata*, or cannot succeed on the merits. Because the Court finds that the Gottfried is entitled to summary judgment, the remaining grounds for dismissal are moot.

## DISCUSSION

Gottfried argues that it is entitled to summary judgment on the merits of Bullock's claims because 1) Bullock has failed to produce any significant, probative evidence showing that Gottfried actively participated in the acts alleged to constitute bad faith denial of his workers' compensation claim, and 2) even assuming Gottfried can be held legally responsible for the denial and litigation of the claim, Gottfried had legitimate reasons for denying the claim in good

---

[3] We note that the carrier and employer voluntarily paid these benefits. Nothing in the order of the administrative law judge from October 1999 set the amount of benefits or ordered the carrier and employer to pay any amount for any period of time.

faith.

Gottfried was Bullock's "employer" and not the workers' compensation insurance carrier administering the claim. Nevertheless, the Mississippi Supreme Court has held that employees are allowed to bring bad faith failure to pay claims against employers. *Luckett,* 481 So.2d at 290 ("Today we extend *Holland* to include a bad faith refusal action against the employer, as well as the carrier, and hold that [the plaintiff] may recover if he can prove his claim."); *Holland,* 469 So.2d at 58-59. To prove his claim against the employer, the employee would have to show, as he would to prove a claim against the carrier, that there has been (1) an intentional refusal by the employer to pay with reasonable promptness the insured's claim; and, (2) the absence of any arguable reason for the defendant's refusal to pay with reasonable promptness. *Toney v. Lowery Woodyards & Employer's Ins. of Wausau*, 278 F. Supp. 2d 786, 793-94 (S.D. Miss. 2003) (citations and quotations marks omitted). In order for the defendant to prevail, it need only show that it had an arguable reason for its actions. *Hood v. Sears Roebuck & Co.*, 532 F. Supp. 2d 795, 801 (S.D. Miss. 2005). In order to recover punitive damages from Gottfried, Mississippi law requires Bullock to prove by a preponderance of the evidence that Gottfried acted with (1) malice or (2) gross negligence or reckless disregard for the rights of others. *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290, 293 (Miss. 1992). Where there is an arguable basis in the denial of payments, there is no valid claim for punitive damages. *Miss. Power & Light Co. v. Cook*, 832 So.2d 474, 485 (Miss. 2002) (citing *Mut. Life Ins. Co. v. Estate of Wesson,* 517 So.2d 521, 527 (Miss. 2002)).

It is the trial judge's responsibility to determine whether there was an arguable basis, legal or factual, for the denial or termination of benefits. *Miss. Power & Light*, 832 So. 2d at 481,

(citing *Andrew Jackson Life Ins. Co. v. Williams,* 566 So.2d 1172, 1184 (Miss. 1990)). A claim of bad-faith denial does not reach the jury unless reasonable minds could differ as to the employer having a legitimate or arguable reason for denying the claim. *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 280 (5th Cir. 1988). The existence of a viable dispute means that both sides had arguable reasons to litigate the issue. *Sobley v. S. Natural Gas Co.,* 302 F.3d 325, 342 (5th Cir. 2002) (recognizing that an arguable basis is a reason sufficiently supported by credible evidence as to lead a reasonable insurer to contest and deny a claim). "An arguable reason is one in support of which there is some credible evidence. There may well be evidence to the contrary." *Hood*, 532 F. Supp. 2d at 803.

It should be noted that an employer is not liable for the bad-faith acts of an insurance carrier. In the context of a fraudulent-joinder claim, the United States District Court for the Southern District of Mississippi determined that an employer who was free from any wrongdoing could not be held liable for the carrier's bad-faith nonpayment of a workers' compensation claim. *Toney v. Lowery Woodyards,* 278 F.Supp.2d 786, 793 (S.D. Miss. 2003) (citing *Holland,* 469 So.2d at 58). Because the employer and carrier are not alter egos when acting in bad faith, the employer and carrier each are liable for their own bad-faith acts, and the bad-faith acts of one are not imputable to the other. *Gallagher Bassett Servs., Inc. v. Malone*, 2010 WL 27854, *11 (Miss. Jan. 7, 2010) (Chandler, J., dissenting).

The relevant evidence for purposes of this Motion begins with Bullock's affidavit testimony that he received a notice of cancellation from his workers' compensation insurance carrier on May 27, 1996. Ct. R. 154-2 p. 1 (¶ 3). The next month, he received a letter from Karl Gottfried offering work at the Stennis Space Center. Ct. R. 154-2 p. 2 (¶ 4). He told Gottfried at

that time that he did not have the required insurance coverage. But it was not until he met with Gottfried in August that he was able to talk to him about it. According to Bullock, Gottfried agreed to provide insurance by back charging premiums. *Id.* Bullock began work during the first week of September 1996. Ct. R. 147-22 p. 5.

After Bullock's injury in November 1996, Karl Gottfried wrote a letter to the Mississippi Worker Compensation Commission dated January 15, 1997, in which he asserted that Bullock was not an employee, but a subcontractor under a subcontract that required him to carry his own workers' compensation insurance. Ct. R. 147-5. Gottfried attached a copy of the subcontract and a certificate of insurance showing that an effective, unexpired workers' compensation insurance policy had been issued to Bullock. Ct. R. 147-2. Gottfried closed the letter by stating his position that Bullock was covered by his own insurance and should contact his own insurance carrier for benefits.

Twelve days after Gottfried sent his letter to the MWCC, on January 27, 1997, Bullock submitted an invoice to Gottfried for the work he performed on Building 3202. Ct. R. 147-6. He indicated two previous payments had been made for his work, one on November 4 and the other on November 22, 1996.[4] Bullock made deductions for these previous payments. In addition, Bullock made deductions for workers' compensation and general liability insurance.[5] The invoice was paid by Gottfried on March 7, 1997, with a notation that "[a] copy of the backcharge for the insurance is also enclosed for your files." Ct. R. 147-7.

---

[4] Bullock testified in his deposition that there was no deduction for workers' compensation insurance premiums from either one of those payments. Ct. R 147-22 p. 21.

[5] There was also noted a "payment toward material at [illegible] Supply." Ct. R. 147-6.

During his deposition, Gottfried testified that his internal investigation led him to believe that Bullock's insurance was effective at the time of his injury, but had lapsed by the time Gottfried wrote the letter. Ct. R. 154-2 p. 22-23. He could not pinpoint the date he learned that information. *Id*. at 59-60. Gottfried did not recall receiving notification from Bullock's workers' compensation insurance carrier that the policy had lapsed. *Id*. at 23. The certificate of insurance had been provided by Bullock earlier in regard to other work performed for Gottfried. *Id*. at 62-63. Gottfried testified that he and Bullock had no agreement to backcharge workers' compensation insurance premiums. *Id*. at 28.

AIG Claims Services was responsible for completing the investigation of Bullock's claim. Ct. R. 154-3 p. 4. The claim was denied because AIG Claim Services determined there was neither an employee-employer relationship, *id*. at 5, nor a statutory employee-employer relationship. *Id*. at 7. Early in its investigation, "in the latter part of January of '97 or the first of February," AIG determined that Bullock's workers' compensation insurance policy had been cancelled. *Id*. at 8. They were also informed that Gottfried deducted monies for Bullock's workers' compensation insurance. However, that information did not change AIG's conclusion that Bullock was not entitled to workers' compensation benefits:

> In this particular situation, it would not have impacted [our conclusion] in terms of it being a compensable injury under the Act because, again, starting from the beginning of this discussion, our insured advised us that, one, Bullock was not an employee but a subcontractor. There was no employer-employee relationship. He was a subcontractor who had his own insurance. Though we determined through our investigation that it had been cancelled, that didn't change our position in that, again, he's not an employee. And monies subtracted for that purpose did not have an impact on that basis or position.

Ct. R. 154-3 p. 15. The AIG witness further testified that if Bullock and Gottfried had agreed

"before the start of the job to provide workers' compensation insurance for this job, then, yes, it's a possibility that benefits would be covered for Mr. Bullock under the Act." Ct. R. 154-3 p. 16. However, Gottfried had conveyed to AIG that no agreement existed between him and Bullock before the start of the job for Gottfried to provide workers' compensation insurance. Ct. R. 154-3 p. 16. AIG was aware that this dispute existed between Gottfried and Bullock during its investigation. Ct. R. 154-3 p. 31.

In the Court's view, this evidence shows that Gottfried had an arguable basis for litigating the workers' compensation claim. There is clearly a dispute as to whether the parties reached an agreement for Bullock to be included in Gottfried's coverage, and there is evidence supporting both sides of the dispute. Thus, both sides had arguable reasons to litigate the issue. This is true even though Gottfried was unsuccessful before the MWCC and the ALJ made a credibility choice in favor of Bullock on that issue. *See Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (¶9) (Miss. 2003); *Hood v. Tinta*, 247 Fed. Appx. 531 (5th Cir. 2007) (arguable reason to deny claim existed in case where supervisor's sworn, unequivocal denial of employee's allegations was a basis for employer reasonably to believe employee's injuries were not work-related and therefore not eligible for workers' compensation benefits).

<u>The Motion to Strike</u>:

Gottfried objects to several statements in Bullock's affidavit. Gottfried's objections to these statements are well-taken and the Court has not considered any of the statements in reaching its conclusions.[6]

---

[6] First, that the following statement is improper hearsay:
"As I testified in the MWCC hearing, my insurance agency advised that they had notified Gottfried in writing of my insurance cancellation and that was their

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [146] for Summary Judgment filed by The Gottfried Corporation is **GRANTED**. Plaintiff's claims against The Gottfried Corporation are dismissed.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion to Strike [163] is **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 22nd day of March, 2010.

          s/ *Louis Guirola, Jr.*
          LOUIS GUIROLA, JR.
          UNITED STATES DISTRICT JUDGE

---

routine practice." Ct. R. 154-2 p. 2 ¶4;

Second, that the following statements are improper conclusions and/or accusations of lying:

a) "There is no doubt Gottfried knew about my insurance situation and our agreement to backcharge; he has now lied about it for over 10 years to protect his pocketbook." *Id.*;

b) "At that hearing, Mr. Gottfried himself testified that the parties did not negotiate an agreement to 'backcharge' my company's workers' compensation premiums and that the delay in the contract negotiations wasn't because I was uninsured. These are both lies. They are lies told to make money (or, at least, not cost him additional money in the future). He knows they are lies." (*Id.* at p. 3 ¶ 9).

And third, that the following statement is irrelevant:
"Not only was Gottfried backcharging me for insurance on that job, I was also being backcharged by CNG [sic] Construction, Inc., during this same time period for work I was doing on Stennis Building 4110. I have attached a 'Subcontract Analysis' which was created by GNG and faxed to me (the fax number is written across the top). This company is owned by Karl Gottfried, III's brother and his sister-in-law may have also been an officer of the company." *Id.* at p. 2 ¶ 5).